**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Rosanne Cauley Simons,

        Plaintiff,

v.

Midwest Telephone Sales and Service, Inc., also known as Central Telephone Sales and Service, Inc.; and Frank Bagot, Sr.,

        Defendants.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT**
Civ. No. 05-1120 ADM/JSM

---

V. John Ella, Esq. and Andrew T. Jackola, Esq., Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, on behalf of Plaintiff.

Mark C. Hart, Esq., Courey, Kosanda & Zimmer, P.A., Golden Valley, MN, on behalf of Defendants.

---

## I. INTRODUCTION

The above-titled matter came on for trial before the undersigned United States District Judge on October 20, 2006 pursuant to Plaintiff Rosanne Cauley Simons' ("Plaintiff") claim that she was terminated by Midwest Telephone Sales and Service, Inc. ("Central Telephone")[1] and Frank Bagot, Sr., ("Bagot") (collectively, "Defendants") in retaliation for exercising a protected

---

[1] The parties have stipulated that Central Telephone Sales and Service, Inc.; Midwestern Telephone Sales and Service, Inc.; Central Tele-Systems; and Midwest Telephone Sales and Service, Inc. all refer to the same company and may be used interchangeably. Stipulation [Docket No. 91]. For ease of reference, the company Defendant will be referred to as Central Telephone.

right under the Employee Retirement Income Security Act ("ERISA") § 510, 29 U.S.C. § 1140.[2] For the reasons set forth below, the Court finds in favor of Plaintiff and awards damages accordingly.

## II. FINDINGS OF FACT

1. Central Telephone is a small company with approximately ten to fifteen employees that sells and services business telephone systems.

2. Plaintiff was an employee of Central Telephone from February 2000 to May 6, 2004. Pl.'s Trial Ex. 2 (Plaintiff's Personnel File). At the time of her termination, she was a customer service representative, earning $15.88 per hour. Id.; Pl.'s Trial Ex. 9. She had health care coverage through Central Telephone, for which she paid $32.50 bi-weekly.

3. Frank Bagot, Sr., is the President of Central Telephone and was Plaintiff's employer.

4. In April 1999, Central Telephone instituted a SIMPLE IRA[3] Plan ("Plan"), into which employees could contribute a portion of their salary each year. Central Telephone was required to match each employee's contribution amount up to a maximum of three percent. Pl.'s

---

[2] In her Amended Complaint [Docket No. 21], Plaintiff asserted additional claims for benefits due under an employee benefit plan pursuant to 29 U.S.C. § 1132(a)(1)(B) and compensation for unpaid vacation days pursuant to Minn. Stat. § 181.13. In an Order [Docket No. 79] dated June 1, 2006, the Court granted Plaintiff summary judgment on her claim for ERISA benefits in the amount of $1,456.55, and denied Plaintiff's claim for unpaid vacation days. Plaintiff's retaliation claim was the sole remaining issue for trial.

[3] SIMPLE stands for Savings Incentive Match Plan for Employees of Small Employers. Pl.'s Trial Ex. 1. IRA is an acronym for Individual Retirement Account or Individual Retirement Annuity.

Trial Ex. 1. Bagot is a fiduciary of the Plan.[4]

5. During her employment, Plaintiff participated in the Plan in three years, contributing $782 in 2001, $609 in 2002, and $1,000 in 2004. Pl.'s Trial Ex. 2; Pl.'s Trial Ex. 3.

6. Defendants have not made the required matching contributions to the Plan.

7. In April 2004, Plaintiff met with a financial planner who informed her that Central Telephone was required by law to make matching contributions.

8. Bagot had no intention of firing Plaintiff on May 6, 2004, prior to his arrival at Central Telephone.

9. On that day, Bagot received a letter from Plaintiff inquiring about Defendants' contribution to the Plan. Pl.'s Trial Ex. 3. Specifically, the letter stated:

> Dear Frank [Bagot]:
> I've been working with a financial planner on my retirement savings and it appears there have been no employer contributions to my Simple IRA account to date. I contributed $782 in 2001 and $609 in 2002. I would like to know when these contributions will be made. Please respond in writing to me by May 20, 2004. Thank You.
> Sincerely,
> Rosanne Cauley

10. Prior to this occasion, Plaintiff had corresponded with Defendant in writing about the Plan, including changes to her contribution amount, and other employment matters such as requests for time off. Pl.'s Trial Ex. 2.

---

[4] "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

11. After receiving the letter on May 6, Bagot met with Victoria Krause, Central Telephone's Bookkeeper, at the Radisson Hotel in Plymouth, and discussed the content and form of Plaintiff's inquiry. Pl.'s Trial Ex. 11.

12. Bagot was bothered and hurt by Plaintiff's inquiry, specifically that she had chosen to write a letter rather than speaking to him about her IRA.

13. Later on the afternoon of May 6, 2004, Bagot approached Plaintiff to discuss the letter. Plaintiff inquired about Defendants' Plan contributions, and Bagot responded that no matching contributions would be made until the financial condition of Central Telephone improved.

14. During the discussion, Bagot questioned Plaintiff as to why she had put her inquiry in writing rather than approach him to speak about the matter personally.[5]

15. At the end of his conversation with Plaintiff, Bagot expressed in some form the idea that you are unhappy with me and I am unhappy with you and I think you should leave. Plaintiff asked if she was being fired, and Bagot affirmed that she was.

16. Based on Central Telephone's declining business, Bagot and Nye McCarty ("McCarty"), Plaintiff's immediate supervisor, had determined prior to the events of May 6, 2004, that Plaintiff would be laid off at some point after July of that year if she did not quit by then. In addition, Bagot and McCarty had heard general office discussion that Plaintiff was not intending to return to work after her wedding in July 2004.

---

[5] The parties dispute whether Plaintiff stated that she wanted all correspondence with Bagot in writing because she "did not trust" him prior to her termination, or whether she verbalized her mistrust of Bagot after she was fired. It is unnecessary to resolve this question of fact, as it does not affect the outcome of the case.

17. Plaintiff denies that she had any plans not to return to work at Central Telephone after her wedding.

18. Plaintiff's job performance was not discussed with her during her conversation on May 6 with Bagot or at any other time during her employment. There are no documented performance problems in her personnel file. Pl.'s Trial Ex. 2.

19. After her termination, Plaintiff was unemployed until September 1, 2004, when she began a part-time job at Excellence Marketing, Inc., earning $14.50 per hour with no benefits. Pl.'s Trial Ex. 10. She worked approximately twenty-five hours per week.

20. Because she was without health care benefits after her discharge, Plaintiff elected to continue her health care coverage through Central Telephone, which cost $292.74 per month.

## III. CONCLUSIONS OF LAW

Plaintiff claims that she was terminated in retaliation for questioning Bagot about Defendants' contributions to the Plan, constituting a violation of ERISA § 510. Defendants contend that Plaintiff's activity was not protected under the statute, and furthermore, that she was terminated for lawful reasons.

According to ERISA § 510, "[i]t shall be unlawful for any person to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, [or] this subchapter . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, [or] this subchapter . . . ." 29 U.S.C. § 1140.

Claims brought under section 510 of ERISA are analyzed under the three-step burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05

(1973). Jefferson v. Vickers, Inc., 102 F.3d 960, 964 (8th Cir. 1996).  To demonstrate a *prima facie* case of retaliation under section 510, Plaintiff must prove that she "participated in a statutorily protected activity . . . that an adverse employment action was taken against [her] . . . and that a causal connection existed between the two."  Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992).  "If plaintiff makes out a *prima facie* case of retaliation, the employer must articulate a legitimate, nondiscriminatory reason for its actions.  If the employer meets that burden, plaintiff must prove that the proffered reason is pretextual."  Id. at 1089-90.

**A.       Prima Facie Case of Retaliation**

Plaintiff argues that her inquiry to Bagot was a protected activity, as it was an exercise of a right to which she was entitled under ERISA.  Defendants argue that Plaintiff's activity is not protected, because it was an informal inquiry made to a supervisor, which is not a right protected by the statute.

"It is an open issue in [the Eighth] Circuit whether § 510 protects informal complaints or protests relating to [actions] that a participant reasonably believes to be illegal [under ERISA]."  Langlie v. Onan Corp., 192 F.3d 1137, 1141 (8th Cir. 1999).  Defendants cite cases from the Second and Fourth Circuits that indicate informal complaints are not protected activity under ERISA.  Nicolaou v. Horizon Media, Inc., 402 F.3d 325 (2d Cir. 2005); King v. Marriott Int'l, Inc., 337 F.3d 421 (4th Cir. 2003).  However, those cases deal with the latter half of section 510, discussing information or testimony given in a proceeding or inquiry, not the preceding language at issue here.  Further, those decisions are not binding on this Court.

Here, the Court finds McLean v. Carlson Cos., 777 F. Supp. 1480 (D. Minn. 1991), persuasive. The court in McLean reasoned that although ERISA does not specifically grant employees the right to report violations to superiors or plan administrators, "[i]n view of the express authorization which plaintiff possesses to sue to remedy violations of ERISA, the court finds it logical to infer that plaintiff also possesses the right to inform plan administrators of suspected violations of ERISA." 777 F. Supp. at 1484. Plaintiff voiced her concerns about Defendants' failure to make legally required contributions to the Plan in her letter to Bagot, the president of Central Telephone and a Plan fiduciary. In doing so, she was exercising a right provided to her under ERISA and engaging in a statutorily protected activity.

Next, Plaintiff must demonstrate a causal connection between her inquiry to Bagot and an adverse employment action, her termination. "The requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." Rath, 978 F.2d at 1090; see also Eckelkamp v. Beste, 315 F.3d 863, 871 (8th Cir. 2002) (affirming the district court's conclusion that plaintiff established a *prima facie* case of retaliation by providing evidence of the short time between his protests about management practices regarding an employee stock ownership plan and his discharge). Here, Plaintiff has established a causal connection between her inquiry to Bagot and her discharge. Bagot stated that he had no intention of terminating Plaintiff's employment when he arrived at work on May 6, 2004. There was unrebutted testimony that Bagot was bothered and hurt by her inquiry being in writing. Further, Plaintiff was terminated within hours of Bagot's receipt of the letter. In fact, Bagot discharged Plaintiff during the conversation in which she and Bagot were discussing Defendants' contributions to the Plan. Based on the close

proximity of Plaintiff's inquiry to her termination, Plaintiff has shown that her inquiry, and the written form that she put it in, led directly to her discharge. As such, Plaintiff has successfully demonstrated the elements of her *prima facie* case that she was terminated in retaliation for her inquiry.

**B.** **Legitimate, Nondiscriminatory Reason**

As Plaintiff has made a *prima facie* showing of retaliation, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for her discharge. Defendants aver that their reasons for terminating Plaintiff were unrelated to her inquiry about Defendants' contributions to the Plan. Rather, they contend that she was fired for disparaging Bagot's reputation, and for performance and economic reasons. Defendants argue that they decided to discharge Plaintiff before her inquiry because business had declined and Plaintiff was the least productive employee at Central Telephone. They claim that the planned termination was to occur in July 2004, after Plaintiff's wedding, but was accelerated when Plaintiff insulted Bagot on May 6, 2004. Thus, Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's discharge.

**C.** **Pretext**

Because Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to establish that Defendants' asserted reasons are mere pretext. In light of the evidence presented at trial, Defendants' proffered reasons are unconvincing. Despite Defendants' assertions to the contrary, there has been no showing that Plaintiff was terminated based on her job performance. Neither productivity or performance issues had ever been discussed with Plaintiff during her employment at Central

Telephone and they were not raised in her conversation with Bagot.  Likewise, there is no documentation of any performance issues in her personnel file.  McCarty, her direct supervisor, denied that Plaintiff had performance problems.  Rather, he indicated that Plaintiff "would be the next to go" based on the lack of work at Central Telephone and her low seniority level.  However, the planned discharge due to lack of work was not to occur until at least July 2004 after Plaintiff's wedding.  Likewise, Plaintiff's rumored plan to resign from Central Telephone after her wedding would not have affected her employment status until at least July 2004.

Bagot admitted that he had no plans to discharge Plaintiff on May 6, 2004, prior to receiving her letter that day.  Although Bagot asserts that he made the decision to fire Plaintiff during their conversation because Plaintiff stated that she did not trust him, her statement is related to her protected activity, and is unlikely to have caused her termination but for her inquiry to Bagot about the Plan.  By his own admission, Bagot was bothered and hurt by her inquiry and specifically questioned her about the written form in which the inquiry was made.  The Court finds that Plaintiff's inquiry directly led to her termination, and Defendants' claims that she was fired for disparaging Bagot's character and for performance and economic reasons are unsubstantiated.  Plaintiff has successfully demonstrated that she was terminated as a result of her protected activity, and that Defendants' stated reasons for her termination are pretextual.  As such, Defendants are liable for damages that Plaintiff incurred as a result of her discharge.

### IV.  DAMAGES

Plaintiff is entitled to compensatory damages for injury that she suffered as a result of her wrongful discharge.  Section 510 of ERISA expressly states that the section 502 civil

enforcement provisions of ERISA "shall be applicable in the enforcement of this section." 29 U.S.C. § 1140; see also Anderson v. Elec. Data Sys. Corp., 11 F.3d 1311, 1315 (5th Cir. 1994).

Under section 502(a)(3)(B)(i), Plaintiff is entitled to appropriate equitable relief to redress Defendants' violation of ERISA's anti-retaliation provision. 29 U.S.C. § 1132(a)(3)(B)(i); see also Schwartz v. Gregori, 45 F.3d 1017, 1022-23 (6th Cir. 1995) (holding that back pay is available under § 502(a)(3) as restitutionary equitable relief); Russell v. Northrop Grumman Corp., 921 F. Supp 143, 152 (E.D.N.Y. 1996) (same). Plaintiff provided evidence of damage sustained, in lost wages and benefits. The Court awards her back pay and health care costs, from May 7, 2004, through December 31, 2004, less her usual health care plan costs and income earned after she obtained employment on September 1, 2004.[6]

Damages are awarded as follows:

1.  $1,456.55 in unpaid employer contributions to Plaintiff's Plan account pursuant to the Memorandum Opinion and Order dated June 1, 2006 ("Order") [Docket No. 79] granting summary judgment in favor of Plaintiff on her claim for benefits due under the Plan.

2.  $16,840.52 for Plaintiff's lost wages and health care payments from May 7, 2004, through December 31, 2004. The Court arrived at a damage award of $16,840.52 by adding Plaintiff's lost wages ($21,723.84) and health care payments ($2,049.18) from May 7, 2004, through December 31, 2004, and subtracting her usual health insurance payments under Central Telephone's plan ($552.50) and her earnings from Excellence Marketing, Inc. ($6,380.00), for this same period.

---

[6] The Court has set the appropriate time period for relief at just under eight months, until year-end 2004, as there was credible evidence that Plaintiff would have left employment at Central Telephone either voluntarily or involuntarily within the near future after May 6, 2004.

## V.  ATTORNEYS' FEES

Plaintiff has requested an award of attorneys' fees in the amount of $68,623.50 and costs in the amount of $2,079.46.  Mem. of Law in Supp. of Pl's. Mot. for Att'ys' Fees and Costs [Docket No. 98].  ERISA § 502(g)(1) gives courts discretion to award reasonable attorneys' fees and costs associated with litigation.  29 U.S.C. § 1132(g).  The Eighth Circuit has articulated a five factor test to determine whether attorneys' fees should be awarded in ERISA matters.  The factors to be considered are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.  Lawrence v. Westerhaus, 749 F.2d 494, 495-96 (8th Cir. 1984).  The five factor test is not to be mechanically applied, rather courts "use the factors and other relevant considerations as general guidelines for determining when a fee is appropriate."  Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966, 972 (8th Cir. 2002).

First, Plaintiff argues that Central Telephone is culpable for its failure to make required contributions to the Plan, and that Defendants are culpable for Plaintiff's retaliatory termination.  Although Bagot admitted that he had not made required contributions to the Plan, he justified his actions by relying on Defendants' financial inability to contribute.  There was also testimony from Central Telephone employees and Bagot that Defendants intended to make the contributions once they were financially able.  Although Plaintiff is entitled to recover monetary

11

relief for contributions that should have been made to her IRA, as well as back-pay resulting from her wrongful discharge, the first factor does not weigh overwhelmingly in her favor.

As to the second factor, Defendants claim that Central Telephone's financial state restricts their ability to withstand a judgment awarding Plaintiff attorneys' fees. Although there is evidence that Central Telephone has faced financial difficulty in recent years, Bagot continues to draw a substantial salary from Central Telephone, and the company owns an apartment for Bagot's use. As a result, there has not been a sufficient showing that Central Telephone would be unable to pay attorneys' fees and costs awarded to Plaintiff.

Plaintiff argues that awarding attorneys' fees is the sole method of deterring Bagot and other potential retaliatory employers from violating ERISA, as required by the third factor. In this case, the level of deterrence achieved by awarding Plaintiff attorneys' fees is minimal. This case is essentially a personal dispute between Plaintiff and Defendants regarding her termination. There is no showing that a fee award would deter behavior by Defendants or other employers in the future.

Likewise, there is not sufficient evidence to show that Plaintiff's suit sought to benefit all plan participants or raised a significant legal issue. Plaintiff will be individually compensated for the injury that she sustained through her damage recovery. As this is a case involving an individual dispute, there is no indication that an award of attorneys' fees would benefit persons beyond Plaintiff. In addition, there has been no significant legal issue raised in this matter. This is a straightforward, single issue case involving retaliatory termination, not a complex question of law arising under ERISA.

Finally, in consideration of the fifth factor, Plaintiff has successfully demonstrated that she was unlawfully terminated in retaliation for her inquiry to Bagot about the Plan. However, not all of Plaintiff's claims were meritorious. Claims asserted for unpaid vacation time and requesting court ordered anger management classes for Bagot were denied.

Considering the five factors and the particular circumstances of this case, Plaintiff is entitled to an award of attorneys' fees and costs associated with litigation. However, not every factor weighs in favor of Plaintiff, thus, full recovery of $68,623.50 in attorneys' fees is not reasonable in this case where the compensatory damages total less than $20,000.00.

A reasonable award of attorneys' fees "must be determined on the facts of each case." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). As discussed previously, this case deals with a single, uncomplicated dispute. All of the relevant events occurred on a single day, May 6, 2004, in essentially one brief conversation, and involved a single key document, Plaintiff's letter to Bagot inquiring about IRA contributions. Further, the matter was fully tried before this Court in half a day. This case could have easily been handled by one attorney, rather than co-counsel. Based on the foregoing, the Court finds that an award of attorneys' fees in the amount of $32,000.00 and costs in the amount of $2,079.46 is reasonable.

## VI.  ORDER FOR JUDGMENT

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Court finds in favor of Plaintiff Rosanne Cauley Simons;

2. Accordingly, damages in the amount of $1,456.55 are awarded to Plaintiff for unpaid employer contributions to Plaintiff's Plan account;

3.  Damages in the amount of $16,840.52 are awarded to Plaintiff for lost wages and health care payments; and

4.  Attorneys' fees in the amount of $32,000.00 and costs in the amount of $2,079.46 are awarded to Plaintiff.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


        s/Ann D. Montgomery        
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 13, 2006.